F I L E D

AUG 1 9 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

THE CONSTRUCTION INDUSTRY WELFARE )
FUND OF ROCKFORD, ILLINOIS )
)
               Plaintiff, )
      v. )
)
)
CHARLES JEFFREY ESTES )
)
           Defendant. )

CASE NO. 08 C 50 1 78

KAPALA

## COMPLAINT

**NOW COMES** the Plaintiffs, THE CONSTRUCTION INDUSTRY WELFARE

FUND OF ROCKFORD, ILLINOIS (hereinafter referred to as the "Plaintiff" or the

"Fund"), by and through their attorney, MARC M. PEKAY, P.C. and hereby complain

against the Defendant, CHARLES JEFFREY ESTES (hereinafter referred to as

"Defendant" or "Estes") as follows:

## COUNT I - RESTITUTION

1.     Jurisdiction is based on the Employee Retirement Income Security Act of

1974, 29 U.S.C Section 1001 et. Seq. including Sections 502(a)(3 and 29 U.S.C.

Section 1132 (a)(3)(B)(i).

2.     Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C.

Section 1132 (e)(2), and 28 U.S.C. Section 1391 (a) and (b).

3.     The Fund is a multiemployer benefit plan within the meanings of

Sections 3(3) and 3(37) of ERISA, 29 U.S.C. Sections 1002(3) and 37(A). The Fund is

maintained and administered in accordance with Section 302(c)(5) of the LMRA, 29

U.S.C. Section 186 (c)(5).  The Fund is established pursuant to collective bargaining agreements and Declarations of Trust previously entered into between various Unions and certain employer associations whose employees are covered by the collective bargaining agreements with the unions. The Fund has its offices and conducts business within this District.

4.      Defendant, Charles Jeffrey Estes is an individual who resides within this judicial district.

5.      Defendant was the owner of a Company, Elite Concrete, an Illinois Corporation, which was engaged in an industry affecting interstate commerce within the meaning of Section 3(5) of ERISA, 29 U.S.C. Section 1002(5), and Section 301 (a) of the LMRA, 29 U.S.C. Section 185(c) and the Company had a collective bargaining agreement with various locals which permitted the Company to make contributions to the Plaintiff on behalf of the Defendant.

6.      Based upon contributions submitted by Elite Concrete on behalf of the Defendant, the Defendant secured eligibility in the Fund and qualified for benefits.

7.      On or about April 4, 2008, the Defendant filed a claim for benefits based upon an injury that occurred on August 11, 2006.

8.      On or about April 4, 2008, Defendant filled out a "Reimbursement Agreement" (See Exhibit A) and answered to the best of his knowledge and ability in Exhibit B that:

A.      It was unknown as to the type of accident and if it was work related.

2

B.     That the accident happened when "I was driving down rode in my care and had pain in my lower back".

C.     That he had not retained an attorney.

D.     That no other party was responsible nor was there insurance or anyone else responsible for medical expenses.

E.     That he had not received money or other payment from any third-party.

9.     Based upon the application and information, the Plaintiff Fund paid Defendant's medical bills and claims in the amount of $10,200.89. (See Exhibit C for breakdown of charges).

10.     The Plaintiff then discovered that Defendant filed a workers' compensation claim for the same injury and that there may have been a compromised settlement.

11.     On January 26, 2007, Defendant, through an attorney, Thomas Nash filed an Illinois Workers' Compensation Commission Application for Adjustment of Claim. Defendant signed the Application on January 9, 2007 and listed the date of accident as August 11, 2006 and that the accident happened "while working, Petitioner was injured." (See Exhibit D).

12.     On or about June 5, 2007, the Arbitrator for the Illinois Workers' Compensation Commission approved a Settlement Contract Lump Sum based upon an accident date of August 11, 2006, which occurred "pulling marking pins" and the Defendant received a lump sum of $20,000.00. (See Exhibit E).

3

13.    The Articles of Agreement and Declaration of Trust creating the Fund specifically state, "Anything in this provision contained to the contrary notwithstanding, the provisions hereof shall in no manner have application to a claim or demand of an Employee compensable under provisions of the Workmen's Compensation Laws or similar legislation." (See Exhibit F, p. 9 of Agreement and Declaration of Trust).

14.    The Plan Document, which establishes the benefits and exclusions contains a specific exclusion which excludes, "Any treatment, supplies and/or services related to an Occupational Illness or Occupational Injury" and Occupational Injury is defined as meaning "any Illness or Injury (as applicable) for which the Covered Person is entitled to receive benefits under any state or federal law governing payments to workers for Injuries and/or Illnesses incurred as a result of employment. This includes, but is not limited to, Injuries and Illnesses which result in an entitlement to benefits under any state workers' compensation law or similar state or federal law. (See Exhibit G, pp. 19, 20, 75 of the Summary Plan Document).

15.    Defendant failed to comply with the Reimbursement Agreement he signed on April 4, 2008, (Exhibit A) by:

A.    Failing to cooperate in obtaining information.

B.    Failing to notify the Fund of any claim made against any other party.

C.    Failing to include the amount of benefits paid in any claim for damages.

D.    Failing to reimburse the Fund for the benefits paid to the Defendant.

4

E.     Failing to notify the Funds that this was a workers' compensation case.

16.    Pursuant to Section 502(a)(3) of ERISA, Plaintiff is entitled to Restitution of all money paid by the Plaintiff toward the Defendant's claims including not only the amount paid but also liquidated damages, interest and attorney fees incurred.

**WHEREFORE**, Plaintiffs respectfully request this Court enter a judgment against Defendant,

a.     In favor of the Plaintiff In the amount of $10,200.89.

b.     Award the Plaintiff additional amounts in liquidated damages, interest, the cost of litigation, and legal fees incurred by the Plaintiff.

c.     Such other and further relief as this Court deems appropriate.

## COUNT II - COMMON LAW FRAUD

15.    Plaintiffs reallege paragraphs 1 -14 of Count I as paragraphs 1-14 of this Count II.

16.    Defendant on or about April 4, 2008, filed a fraudulent claim for benefits with the Plaintiff which included, but were not limited to:

A.     Defendant knowing that the injury was work related;

B.     Defendant filed a claim for benefits with the Illinois Workers' Compensation Commission;

C.     Defendant hired an attorney to represent him at the Illinois Workers' Compensation Commission;

D.     Defendant had settled the matter before the Illinois Workers' Compensation Commission and had received payment of $20,000.00.

E.    Defendant submitted documents to the Plaintiff setting forth that this was not work related.

F.    Defendant signed a Reimbursement Agreement knowing that he had already received a lump sum payment based upon the accident or injury that was work related.

G.    Defendant failed to notify the Fund that this was a workers' compensation matter.

H.    Defendant knew or should have known that benefits would not be paid for workers' compensation or occupational injury.

17.    Defendant's actions were in wanton disregard for the truth of the events and were to engage in malicious conduct to secure the payment of benefits.

**WHEREFORE**, Plaintiffs respectfully request this Court enter a judgment against Defendant,

1.    In favor of the Plaintiff In the amount of $10,200.89.

2.    Award the Plaintiff additional amounts in liquidated damages, interest, the cost of litigation, and legal fees incurred by the Plaintiff.

3.    Award the Plaintiff punitive damages

4.    Such other and further relief as this Court deems appropriate.


## COUNT III – PUNITIVE DAMAGES

18.    Plaintiff reallege paragraphs 1-14 of Count I and paragraphs 15 – 17 of Count II as paragraphs 1-17 of Count III.

19.    Defendant's conduct in fraudulently obtaining benefits from the Plaintiff amounts to intentional misconduct.

20.    Based on the above, Plaintiff is entitled to Punitive Damages as a result of Defendant's actions.

    **WHEREFORE**, Plaintiffs respectfully request this Court enter a judgment against Defendant,

    1.    In favor of the Plaintiff In the amount of $10,200.89.

    2.    Award the Plaintiff additional amounts in liquidated damages, interest, the cost of litigation, and legal fees incurred by the Plaintiff.

    3.    Award the Plaintiff punitive damages.

    4.    Such other and further relief as this Court deems appropriate.


                        Respectfully submitted,

                        THE  CONSTRUCTION  INDUSTRY  WELFARE
                        FUND OF ROCKFORD, ILLINOIS, *ET AL.*


            BY:    s/Marc M. Pekay_____
                        MARC M. PEKAY, Attorney for Plaintiffs


MARC M. PEKAY, P.C.
30 North LaSalle St.
Suite 2426
Chicago, IL  60602
(312) 606-0980

7

**REIMBURSEMENT AGREEMENT**

I, CHARLES J ESTES IN CONSIDERATION OF MEDICAL
BENEFITS WHICH ARE PAYABLE ON MY BEHALF THROUGH CONSTRUCTION INDSTRY WELFARE FUND OF ROCKFORD
RECOGNIZE THAT THE INSURING COMPANY (INCLUDING THE ABOVE COMPANY'S
SELF-FUNDED PLAN) HAS THE RIGHT TO BE REIMBURSED IN THE EVENT OF A
RECOVERY FROM ANOTHER PARTY.  THEREFORE, I AND ANYONE ACTING ON MY
BEHALF HEREBY AGREE;

(1) TO FULLY COOPERATE WITH THE COMPANY IN OBTAINING INFORMATION
    ABOUT THE LOSS AND ITS CAUSES; AND

(2) TO NOTIFY THE COMPANY OF ANY CLAIM FOR DAMAGES MADE ON MY
    BEHALF IN CONNECTION WITH THE LOSS; AND

(3) TO INCLUDE THE AMOUNT OF BENEFITS PAID BY THE COMPANY ON MY
    BEHALF IN ANY CLAIM FOR DAMAGES MADE AGAINST THE OTHER PARTY;
    AND

(4) THAT THE COMPANY;

    (A)  SHALL HAVE A LIEN ON ALL SUMS RECOVERED IN CONNECTION
         WITH THE LOSS TO THE EXTENT OF ITS PAYMENT(S); AND
    (B)  MAY GIVE NOTICE OF THAT LIEN TO ANY PARTY WHO MAY HAVE
         CONTRIBUTED TO THE LOSS; AND

(5) TO REIMBURSE THE COMPANY FROM ANY FUNDS FROM THESE OTHER
    PARTIES, WHETHER RECEIVED BY SETTLEMENT, JUDGEMENT, OR
    OTHERWISE.

I HEREBY AUTHORIZE any physician, hospital, pharmacy,
insurance company, employer, claim administrator or
organization to release any information regarding the
medical history, treatment, disability, or benefits for
this claim. A photocopy of this authorization shall be
valid as the original. The above information to the best
of my knowledge is true and accurate.

4-4-08
(Date)

_Charles J Estes_
(Signature of Employee)

4606 STRAIN LN.
(Address of Employee)

Roscoe IL 61073
(City, State, Zip of Employee)

EXHIBIT A

04/03/2008  23:26   18156238728                    ESTES                          PAGE  02/02
04/04/2008 09:00 FAX  815 399 5773          GROUP ADMIN LTD                      ☒002/003

1. DATE AND TIME OF INJURY:  _8-11-06_
   _Approximatley   4:30 pm_

2. TYPE OF ACCIDENT:  FALL   WORK-RELATED   AUTO,
   OTHER  _Unknown_

3. WHERE DID ACCIDENT OCCUR?  _Unknown_

4. HOW DID ACCIDENT OCCUR?  PLEASE GIVE DETAILS:  _Unknown_
   _I was driving down Road in_
   _my Cart and had Pain in_
   _my Lower Back_

5. DO YOU INTEND TO FILE A CLAIM AGAINST A PERSON, BUSINESS, OR
   INSURER (INCLUDING YOUR OWN AUTO OR OTHER LIABILITY INSURER)
   FOR PERSONAL INJURY AND/OR MEDICAL EXPENSES?
   IF SO, AGAINST WHOM?  _NO_

6. IF YOU HAVE RETAINED AN ATTORNEY, PLEASE PROVIDE HIS OR HER
   COMPLETE NAME, MAILING ADDRESS, AND PHONE NUMBER.  _None_

7. IF ANY LIABILITY INSURANCE, WHETHER YOUR OWN INSURANCE (SUCH
   AS AUTO, IF AN AUTO ACCIDENT) OR THE THIRD PARTY'S INSURANCE,
   IS RESPONSIBLE FOR MEDICAL EXPENSES, GIVE THE NAME, ADDRESS,
   AND AGENT FOR EACH INSURANCE COMPANY.  _None_

8. HAVE YOU RECEIVED MONEY OR OTHER PAYMENT FROM A RESPONSIBLE
   THIRD-PARTY?  IF SO, PLEASE GIVE INFORMATION CONCERNING SUCH
   PAYMENTS.  _None_

TO THE BEST OF MY KNOWLEDGE, THE ABOVE STATEMENTS ARE CORRECT.

_4-4-08_
Date
CIWFR 072959590                          Signature of Employee

04/04/2008 FRI 12:35 [TX/RX NO 9863] ☒002

EXHIBIT B

CLAIM INQUIRY REPORT

Group    : CIWFR
Division : 1138201     PLS/CEM FIN-IL VAL LOC 11 AREA 382        Page :   1
Member: 803866985*0 ESTES, CHARLES J                13:49:19  04 Apr 2008

| Claim | Chg Provider | Date-of-Service | Date Paid | Benf Code | Proc Code | Charge Amount | Provider Discount | Ineligible Amount | CD | Deduct Amount | Coins | Payment Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 072958069 | 01 DEAN MEDICAL CENTE | 03-21/03-21-07 | 10-24-07 | 49 | 00630 | 720.00 | 64.80 | 0.00 | | 0.00 | 98.28 | 556.92 |
| 072958068 | 01 DEAN MEDICAL CENTE | 03-21/03-21-07 | 10-24-07 | 49 | 00630 | 720.00 | 64.80 | 0.00 | | 0.00 | 98.28 | 556.92 |
| 072958067 | 01 DEAN MEDICAL CENTE | 03-21/03-21-07 | 10-24-07 | 07 | 63030 | 680.00 | 61.20 | 0.00 | | 0.00 | 92.82 | 525.98 |
| 072712579 | 01 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 375.50 | 0.00 | 375.50 | 27 | 0.00 | 0.00 | 0.00 |
| | 02 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 3441.70 | 0.00 | 3441.70 | 27 | 0.00 | 0.00 | 0.00 |
| | 03 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 33.70 | 0.00 | 33.70 | 27 | 0.00 | 0.00 | 0.00 |
| | 04 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 43.90 | 0.00 | 43.90 | 27 | 0.00 | 0.00 | 0.00 |
| | 05 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 60.40 | 0.00 | 60.40 | 27 | 0.00 | 0.00 | 0.00 |
| | 06 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 29.70 | 0.00 | 29.70 | 27 | 0.00 | 0.00 | 0.00 |
| | 07 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 68.90 | 0.00 | 68.90 | 27 | 0.00 | 0.00 | 0.00 |
| | 08 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 60.50 | 0.00 | 60.50 | 27 | 0.00 | 0.00 | 0.00 |
| | 09 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 81.90 | 0.00 | 81.90 | 27 | 0.00 | 0.00 | 0.00 |
| | 10 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 34.90 | 0.00 | 34.90 | 27 | 0.00 | 0.00 | 0.00 |
| | 11 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 174.70 | 0.00 | 174.70 | 27 | 0.00 | 0.00 | 0.00 |
| | 12 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 992.65 | 0.00 | 992.65 | 27 | 0.00 | 0.00 | 0.00 |
| | 13 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 146.00 | 0.00 | 146.00 | 27 | 0.00 | 0.00 | 0.00 |
| | 14 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 136.50 | 0.00 | 136.50 | 27 | 0.00 | 0.00 | 0.00 |
| | 15 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 87.50 | 0.00 | 87.50 | 27 | 0.00 | 0.00 | 0.00 |
| | 16 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 75.00 | 0.00 | 75.00 | 27 | 0.00 | 0.00 | 0.00 |
| | 17 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 239.75 | 0.00 | 239.75 | 27 | 0.00 | 0.00 | 0.00 |
| | 18 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 297.50 | 0.00 | 297.50 | 27 | 0.00 | 0.00 | 0.00 |
| | 19 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 296.70 | 0.00 | 296.70 | 27 | 0.00 | 0.00 | 0.00 |
| | 20 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 499.05 | 0.00 | 499.05 | 27 | 0.00 | 0.00 | 0.00 |
| | 21 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | OP | 234.00 | 0.00 | 234.00 | 27 | 0.00 | 0.00 | 0.00 |
| | 22 ST MARYS HOSPITAL | 03-21/03-21-07 | 10-09-07 | 47 | 63030 | 718.20 | 0.00 | 718.20 | 27 | 0.00 | 0.00 | 0.00 |
| 072116739 | 01 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 375.50 | 0.00 | 375.50 | 27 | 0.00 | 0.00 | 0.00 |
| | 02 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 3441.70 | 0.00 | 3441.70 | 27 | 0.00 | 0.00 | 0.00 |
| | 03 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 174.70 | 0.00 | 174.70 | 27 | 0.00 | 0.00 | 0.00 |
| | 04 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 81.90 | 0.00 | 81.90 | 27 | 0.00 | 0.00 | 0.00 |
| | 05 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 68.90 | 0.00 | 68.90 | 27 | 0.00 | 0.00 | 0.00 |
| | 06 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 60.50 | 0.00 | 60.50 | 27 | 0.00 | 0.00 | 0.00 |
| | 07 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 60.40 | 0.00 | 60.40 | 27 | 0.00 | 0.00 | 0.00 |
| | 08 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 43.90 | 0.00 | 43.90 | 27 | 0.00 | 0.00 | 0.00 |
| | 09 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 34.90 | 0.00 | 34.90 | 27 | 0.00 | 0.00 | 0.00 |
| | 10 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 33.70 | 0.00 | 33.70 | 27 | 0.00 | 0.00 | 0.00 |
| | 11 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 29.70 | 0.00 | 29.70 | 27 | 0.00 | 0.00 | 0.00 |
| | 12 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 1138.65 | 0.00 | 1138.65 | 27 | 0.00 | 0.00 | 0.00 |
| | 13 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 836.25 | 0.00 | 836.25 | 27 | 0.00 | 0.00 | 0.00 |
| | 14 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 296.70 | 0.00 | 296.70 | 27 | 0.00 | 0.00 | 0.00 |
| | 15 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 499.05 | 0.00 | 499.05 | 27 | 0.00 | 0.00 | 0.00 |
| | 16 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 234.00 | 0.00 | 234.00 | 27 | 0.00 | 0.00 | 0.00 |
| | 17 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 718.20 | 0.00 | 718.20 | 27 | 0.00 | 0.00 | 0.00 |
| | 18 ST MARYS HOSPITAL | 03-21/03-21-07 | 08-06-07 | 47 | OP | 718.20 | 0.00 | 718.20 | 27 | 0.00 | 0.00 | 0.00 |
| 072004542 | 01 DEAN MEDICAL CENTE | 03-21/03-21-07 | 07-23-07 | 49 | 00630 | 720.00 | 0.00 | 720.00 | 27 | 0.00 | 0.00 | 0.00 |
| 072004541 | 01 DEAN MEDICAL CENTE | 03-21/03-21-07 | 07-23-07 | 49 | 00630 | 720.00 | 0.00 | 720.00 | 27 | 0.00 | 0.00 | 0.00 |
| 071985227 | 01 DEAN MEDICAL CENTE | 03-21/03-21-07 | 07-18-07 | 07 | 63030 | 680.00 | 0.00 | 680.00 | 27 | 0.00 | 0.00 | 0.00 |
| 071944587 | 01 DEAN MEDICAL CENTE | 03-21/03-21-07 | 07-17-07 | 48 | 69990 | 1213.00 | 109.17 | 0.00 | | 0.00 | 15.57 | 1088.26 |

EXHIBIT C

CLAIM INQUIRY REPORT

Group    : CIWFR
Division : 1138201    PLS/CEM FIN-IL VAL LOC 11 AREA 382    Page :   2
Member: B0386698S*0 ESTES, CHARLES J    13:49:19  04 Apr 2008

| Claim | Chg Provider | Date-of-Service-Paid | Denf Code | Proc Code | Charge Amount | Provider Discount | Ineligible Amount | CD | Deduct Amount | Coins | Payment Amount |
|-------|--------------|----------------------|-----------|-----------|---------------|-------------------|-------------------|----|---------------|-------|----------------|
|  | 02 DEAN MEDICAL CENTE | 03-21/03-21-07 07-17-07 | 48 | 63030 | 6800.00 | 612.00 | 0.00 |  | 0.00 | 928.20 | 5259.80 |
| 072958066 | 01 DEAN MEDICAL CENTE | 02-15/02-15-07 10-24-07 | 35 | 72100 | 170.00 | 15.30 | 0.00 |  | 0.00 | 0.00 | 154.70 |
| 071975454 | 01 DEAN MEDICAL CENTE | 02-15/02-15-07 07-18-07 | 35 | 72100 | 170.00 | 0.00 | 170.00 | 27 | 0.00 | 0.00 | 0.00 |
| 071944586 | 01 DEAN MEDICAL CENTE | 02-15/02-15-07 07-17-07 | 09 | 99215 | 300.00 | 27.00 | 0.00 |  | 10.00 | 0.00 | 263.00 |
| 0702210174 | 01 ROCKFORD RADIOLOGY | 01-09/01-09-07 01-23-07 | 12 | 72158 | 621.00 | 0.00 | 414.00 | SMA | 200.00 | 1.05 | 5.95 |
| 072134041 | 01 ST ANTHONY MEDICAL | 01-09/01-09-07 08-08-07 | 02 | OP | 3197.00 | 1288.39 | 0.00 |  | 0.00 | 286.29 | 1622.32 |
|  | 02 ST ANTHONY MEDICAL | 01-09/01-09-07 08-08-07 | 02 | OP | 140.00 | 56.42 | 0.00 |  | 0.00 | 12.54 | 71.04 |
| 072886476 | 01 OSF MEDICAL GROUP | 01-08/01-08-07 10-17-07 | 09 | 99214 | 142.00 | 0.00 | 36.00 | SMA | 10.00 | 0.00 | 96.00 |
|  |  | Totals : | | | 33968.50 | 2299.08 | 19715.50 | | 220.00 | 1533.03 | 10200.89 |

## ILLINOIS WORKERS' COMPENSATION COMMISSION
### APPLICATION FOR ADJUSTMENT OF CLAIM  (APPLICATION FOR BENEFITS)

ATTENTION. Please type or print.  Answer all questions. File three copies of this form.

Workers' Compensation Act __X__  Occupational Diseases Act ____    Fatal case? No __X__  Yes ____  Date of death ____ __ __

JAN 26 2007

___CHARLES JEFFREY ESTES___
Employee/Petitioner

v.

Case #            07WC 03630
(Office use only)

___ELITE CONCRETE CONSTRUCTION INC.___
Employer/Respondent

Location of accident  __Rockford, IL__
or last exposure         City, State

Charles Jeffrey Estes, 14720 Pleasant Valley Road, South Beloit, IL 61080
Injured employee's name          Street address          City, State, Zip code

Elite Concrete Construction Inc., 5414 Edith Lane, Roscoe, IL 61073
Employer's name          Street address          City, State, Zip code

Employee information: Social Security # __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__  Male __X__ Female ____    Married __X__ Single ____

# Dependents under age 18 __2__    Birthdate __8/26/64__    Average weekly wage $ __1600.00__

Date of accident [2] __8/11/06__    The employer was notified of the accident orally __X__ in writing ____.

How did the accident occur? __While working, Petitioner was injured__

What part of the body was affected? __Back and Lower Extremities, Man as a Whole__

What is the nature of the injury? __Undetermined at this time__    Return-to-work date [3] __Unknown__

Is a *Petition for an Immediate Hearing* attached? Yes ____  No __X__

Is the injured employee currently receiving temporary total disability benefits? Yes ____  No __X__

If a prior application was ever filed for this employee, list the case number and its status _____

ATTENTION, PETITIONER. This is a legal document. Be sure all blanks are completed correctly and you understand the statements before you sign this. Refer to the Commission's *Handbook on Workers' Compensation and Occupational Diseases* [4] for more information.

_Charles J Estes_          __1/9/07__
Signature of petitioner          Date

### APPEARANCE OF PETITIONER'S ATTORNEY
Please attach a copy of the *Attorney Representation Agreement*.

_Thomas L Nash_
Signature of attorney

__Thomas L. Nash  #1307__
Attorney's name and IC code # (please print)

__Thomas L. Nash, P.C.__
Firm name

__2425 Charles Street__
Street address

__Rockford, IL 61108__
City, State, Zip code

__(815) 397-7500__
Telephone number          E-mail address

12/04  100 W. Randolph Street #8-200 Chicago, IL 60601  312/814-6611  Toll-free 866/352-3033  Web site: www.iwcc.il.gov
Branch offices: Collinsville 618/346-1450  Peoria 309/671-3019  Rockford 815/987-7292  Springfield 217/785-7084
Disclosure of this information to the Commission is done voluntarily under 820 ILCS 305/6(b).

## EXHIBIT D

## PROOF OF SERVICE

If the person who signed the *Proof of Service* is not an attorney, this form must be notarized.
If you prefer, you may submit the front of this application form with the *Proof of Service* on a separate page.

I, ___Thomas L. Nash_____ , affirm that I  delivered _____  mailed with proper postage __X__

in the city of ___Rockford_____ a copy of this form

at __5:00___ ~~AM~~/PM  on ___1/9/07_____  to the respondent listed on this application and to each

additional party, if any, at the address listed below.


_____

Signature of person completing *Proof of Service*


Signed and sworn to before me on _____


_____

Notary Public


[1] In most cases, the injured employee files this application and is referred to as the petitioner. If the injury was fatal, or if the worker is a minor or incapacitated, another person (as allowed by law) may file. In those cases, the person filing the application is the petitioner, and the worker is referred to as the injured employee. Please complete information related to age, etc., for the injured employee.

[2] This may be the date of the accident, last exposure, disability, or death.

[3] If the employee has not returned to work, leave this space blank.

[4] The Commission publishes a handbook that explains the workers' compensation system. If you would like a copy, please call any of the Commission offices listed on the other side of this form.

[5] The Commission assigns code numbers to attorneys who regularly practice before it. To obtain or look up a code number, contact the Information Unit in Chicago or any of the downstate offices at the telephone numbers listed on this form.

IC1 page 2

## ILLINOIS WORKERS' COMPENSATION COMMISSION
## SETTLEMENT CONTRACT LUMP SUM PETITION AND ORDER

ATTENTION. Please type or print. File four copies of this form. Attach a recent medical report. Answer all questions.

Workers' Compensation Act  X   Occupational Diseases Act _____   Fatal case? No  X  Yes _____  Date of death _____

CHARLES J. ESTES _____   Case # 07 WC 003630
Employee/Petitioner

v.

ELITE CONCRETE CONSTRUCTION, INC. _____   Setting Rockford
Employer/Respondent

To resolve this dispute regarding the benefits due the petitioner under the Illinois Workers' Compensation or Occupational Diseases Act, we offer the following statements. We understand these statements are not binding if this contract is not approved.

| Charles J. Estes | 14720 Pleasant Valley Road | South Beloit | IL | 61080 |
|---|---|---|---|---|
| Employee's name | Street address | City | State | Zip code |
| Elite Concrete Construction, Inc. | 5414 Edith Lane | Roscoe | IL | 61073 |
| Employer's name | Street address | City | State | Zip code |

Employee's Social Security # 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 _____   Male  X  Female _____   Married  X  Single _____

# Dependents under age 18 __2__   Birthdate __08/26/1964__   Average weekly wage $1,600.00

Date of accidents* __08/11/06, et al.__

How did the accidents* occur? Pulling marking pins, (disputed), any and all.

What part of the body was affected? Back, man as a whole (disputed), any and all.

What is the nature of the injuries*? L4/L5 disc herniation (disputed), any and all.

The employer was notified of the accident orally  X  in writing _____.    Return to work date __disputed__

Location of accident Illinois (disputed) _____   Did the employee return to his or her regular job? Yes  X  No _____
If not, explain below and describe the type of work the employee is doing, the wage earned, and the current employer's name and address.

TEMPORARY TOTAL DISABILITY BENEFITS: Compensation was paid for N/A weeks at the rate of N/A week.

The employee was temporarily totally disabled from disputed _____ through disputed _____

MEDICAL EXPENSES: The employer has ____ has not  X  paid all medical bills. List unpaid bills in the space below.
**All benefits under Act are in dispute. No bills were paid.**

PREVIOUS AGREEMENTS: Before the petitioner signed an *Attorney Representation Agreement*, the respondent or its agent offered in writing to pay the petitioner $ -0- as compensation for the permanent disability caused by this injury.

An arbitrator or commissioner of the Commission previously made an award on this case on N/A regarding

TTD -0- _____   Permanent disability -0- _____   Medical expenses -0- _____   Other -0- _____

IC5  12/04  100 W. Randolph Street #8-200 Chicago, IL 60601 312/814-6611  Toll-free 866/352-3033  Web site: www.iwcc.il.gov
Downstate offices: Collinsville 618/346-3450  Peoria 309/671-3019  Rockford 815/987-7292  Springfield 217/785-7084
"This form is a true and exact copy of the current IWCC form IC5, as revised 12/04."

EXHIBIT E

**TERMS OF SETTLEMENT:** Attach a recent medical report signed by the physician who examined or treated the employee.
Respondent to pay and petitioner to accept $20,000.00 in full and final settlement of any and all claims under the Illinois Workers' Compensation and Occupational Disease Acts for all accidental injuries allegedly incurred through the date of Illinois Workers' Compensation Commission approval of this contract including any and all results or developments, fatal or non-fatal, allegedly resulting from such accidental injuries. Issues exist between the parties as to whether petitioner has incurred injuries to the degree alleged and whether or not such injuries are compensable, and this settlement is made to amicably settle all issues. This settlement includes liability for TTD, TPD, and all medical, surgical, and hospital expenses, past or future, for all of which petitioner expressly assumes responsibility. All rights under §§6(a) and 19(h) of the Act are expressly waived by the parties. Respondent specifically reserves and does not waive any rights to reimbursement pursuant to Section 5 of the Illinois Workers' Compensation and Occupational Diseases Acts as part of and as additional consideration for this settlement. **The parties agree that other claims under the Acts may exist, and that petitioner fully releases respondent from any and all such claims through the date of Illinois Workers' Compensation Commission approval of this contract as this settlement is based on petitioner's present condition and it is the specific intent of petitioner to release respondent from any and all alleged accidental injuries, exposures or claims of any nature arising through the date of Illinois Industrial Commission approval of this contract without exception.** The petitioner asserts that he/she has not applied for, is not eligible for, and is not currently receiving Medicare, and that he/she has not applied for, is not eligible for, and is not currently receiving SSDI benefits. This settlement is made to end all litigation between the parties for claims under the Act through the date of Illinois Workers' Compensation Commission approval of this contract. Without limiting the generality of the foregoing release, this settlement represents (on an industrial basis): **Approximately 6.4% loss of use of man as a whole and an additional $1.00 for any and all other possible claims to date.**

| | |
|---|---|
| Total amount of settlement | $20,000.00 |
| Deduction: Attorney's fees | $ 4,000.00 |
| Deduction: Medical reports, X-rays | $ |
| Deduction: Other (explain) | $ |
| Amount employee will receive | $ 16,000.00 |

**PETITIONER'S SIGNATURE.** *Attention, petitioner. Do not sign this contract unless you understand all of the following statements.*
I have read this document, understand its terms, and sign this contract voluntarily. I believe it is in my best interests for the Commission to approve this contract. I understand that I can present this settlement contract to the Industrial Commission in person. I understand that my signing this contract, I am giving up the following rights: (* denotes changed text from singular to plural)

    1. My right to a trial before an arbitrator;
    2. My right to appeal the arbitrator's decisions* to the Commission;
    3. My right to any further medical treatment, at the employer's expense, for the results of these injuries*;
    4. My right to any additional benefits if my condition worsens as a result of these injuries*.

| | | | |
|---|---|---|---|
| | Charles J. Estes | | |
| Signature of petitioner | Name of petitioner (please print) | Telephone number | Date |

**PETITIONER'S ATTORNEY.** I attest that any fee petitions on file with the IWCC have been resolved. Based on the information reasonably available to me, I recommend this settlement contract be approved.

*Thomas L. Nash*
_____
Signature of attorney      Date

Thomas L. Nash
_____
Name of attorney and IC code # (please print)

Thomas L. Nash, P.C.
_____
Firm name      FEIN:

2425 Charles Street
_____
Street address

Rockford      IL    61108
_____
City      State   Zip code

815-397-7500
_____
Telephone number      E-mail address

**RESPONDENT'S ATTORNEY.** I attest that any fee petitions on file with the IWCC have been resolved. The respondent agrees to this settlement and will pay the benefits to the petitioner or the petitioner's attorney, according to the terms of this contract, promptly after receiving a copy of the approved contract.

*Randall R. Stark*      5-30-07
_____
Signature of attorney      Date

Randall R. Stark      #507
_____
Name of attorney and IC code # or agent (please print)

Rusin Maciorowski & Friedman, Ltd.
_____
Firm name

10 South Riverside Plaza, Suite 1530
_____
Street address

Chicago      IL    60606
_____
City      State   Zip code

312-454-5110      rstark@rusinlaw.com
_____
Telephone number      E-mail address

West Bend Mutual Insurance Company
_____
Name of respondent's insurance or service company (please print)

ILLINOIS WORKERS' COMPENSATION COMMISSION
pursuant to the provisions of the
Workers' Compensation and Workers'
Occupational Diseases Acts

JUN 0 5 2007

**ORDER OF ARBITRATOR OR COMMISSIONER:**
Having carefully reviewed the terms of this contract, in accordance with Section 9 of the Act, by my stamp I hereby approve this contract, order the respondent to promptly pay in a lump sum the total amount of settlement stated above, and dismiss this case.

W:\DOCS\7467\02\00559064.DOC
IC5 page 2

By: *Douglas J. Holland* , Arbitrator

**RESTATED**

**AGREEMENT AND DECLARATION OF TRUST**

**CONSTRUCTION INDUSTRY WELFARE FUND**

**ROCKFORD, ILLINOIS**

EXHIBIT F

Dependent of any such Employee, as the case may be, fails to notify the Trustees, as herein required, then upon any recovery made, whether by suit, judgment, settlement, compromise, or otherwise, by the Employee, Total and Permanently Disabled Employee, Retired Employee, or Dependent of any such Employee, the Trustees shall be entitled to reimbursement to the extent of benefits paid in accordance with terms of the Plan immediately on demand, and shall have the right to recovery thereof by suit or otherwise.

Anything in this provision contained to the contrary notwithstanding the provisions hereof shall in no manner have application to a claim or demand of an Employee compensable under provisions of the Workmen's Compensation Laws or similar legislation.

### ARTICLE III
### TRUSTEES

#### SECTION 1
#### UNION AND EMPLOYER TRUSTEES

As of the date of this Agreement, the Trustees are those individuals executing this Agreement as Trustees. At all times, four (4) of the Trustees shall be individuals appointed by and representing the Unions and four (4) of the Trustees shall be individuals appointed by and representing the Association. The Trustees shall have the exclusive authority and discretion to manage and control the assets of the Plan on and subject to the terms of this Agreement.

-9-

# Construction Industry Welfare Fund
## of Rockford, Illinois

## Welfare Plan

*Summary Plan Description*

**June 2003**

EXHIBIT G

research.

- the supply or service must not consist of repeated or unnecessary testing.

The initial determination of whether a supply or service is Medically Necessary shall be made by the Claims Administrator by applying the criteria listed above. In the event of a question as to whether something is Medically Necessary, the Claims Administrator may obtain a review by an independent health care review organization to assist it in applying these factors. Ultimately, if the Claimant appeals an initial determination, the decision whether a supply or service is Medically Necessary shall be made by the Trustees in its sole discretion.

**Medicare:** The term *Medicare* means the programs established by Title 18 or Public Law 80-90, as amended, entitled Health Insurance For the Aged Act, and which includes Part A (Hospital Benefits) and Part B (Supplementary Medical Insurance Benefits).

**Mental or Nervous Disorder:** The term *Mental or Nervous Disorder* means any disease or condition that is classified as a Mental Disorder in the current edition of International Classification of Diseases, published by the U.S. Department of Health and Human Services, or is listed in the current edition of Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association.

Notwithstanding the foregoing, the following conditions shall be considered to be Mental or Nervous Disorders for purposes of this Plan:

Any psychotic disorder, psycho physiologic, autonomic or visceral disorder, psychoneurotic disorder, personality disorder, transient situational personality disorder, or any other mental or emotional disorder of any type; alcoholism, drug abuse, and attention deficit disorder.

**Network:** The term *Network* refers to a preferred provider organization (PPO), whereby if a Covered Person utilizes a Health Professional in the Network, a discount could be received, and could result in a lower Co-Pay for the Covered Person.

**Non-Bargaining Unit Employee:** The term *Non-Bargaining Unit Employee* means an Employee who is not a Bargaining Unit Employee.

**Non-Participating Provider:** The term *Non-Participating Provider* means a Health Professional, Hospital, Skilled Nursing Facility, Home Health Agency, pharmacy, or other duly licensed health care provider who does not have an agreement with the Provider Network to provide medical and Hospital services to Covered Persons.

**Non-Urgent Care Claim:** The term *Non-Urgent Care Claim* means a claim for benefits under the Plan that does not constitute an Urgent Care Claim.

**Occlusion:** The term *Occlusion* means the contact relationship of the upper and lower teeth when they are brought together.

**Occupational Illness/Injury:** The terms *Occupational Illness and Occupational*

19

*Injury* mean any Illness or Injury (as applicable) for which the Covered Person is entitled to receive benefits under any state or federal law governing payments to workers for Injuries and/or Illnesses incurred as a result of employment. This includes, but is not limited to, Injuries and Illnesses which result in an entitlement to benefits under any state workers' compensation law or similar state or federal law.

**Occupational Therapist:** The term *Occupational Therapist* means a person who has all educational requirements, licenses, permits and accreditations required in the jurisdiction in which the services were provided to evaluate the functional performance ability of persons impaired by physical Illness or Injury, emotional disorder, congenital or development disability, or the aging process, and to analyze, select and apply occupations or goal-directed activities for the treatment or prevention of these disabilities to achieve optimum functioning. Services provided by an Occupational Therapist include the design fabrication and application of splints, administration and interpretation of standardized tests to identify dysfunctions, sensory-integrative and perceptual motor activities, the use of task oriented activities, guidance in the selection and use of assistive devices, goal oriented activities directed toward enhancing functional performance, prevocational evaluation and vocational training, and consultation in the adaptation of physical environments for the handicapped.

**Ongoing Course of Treatment:** The term *Ongoing Course of Treatment* means a Pre-Service Claim for covered services that will be provided over a period of time or number of treatments that has been approved by the Plan.

**Onlay:** The term *Onlay* means a cast Restoration that covers the entire chewing surface of the tooth.

**Open Enrollment Period:** The term *Open Enrollment Period* means the period of time specified by the Trustees during which any eligible person: 1) who is not a Covered Person may enroll in the Plan; or

2) who is a Covered Person may change his or her Network elections or enroll in a different Health Plan (if any) sponsored by the Trustees. The Open Enrollment Period shall be held annually each Plan Year for enrollment during the next succeeding Plan Year.

**Orthodontic Treatment:** The term *Orthodontic Treatment* means dental treatment with its objective as the correction of malocclusion of the teeth.

**Orthodontics:** The term *Orthodontics* means the branch of dentistry primarily concerned with the detection, prevention and correction of abnormalities in the positioning of the teeth in their relationship to the jaws.

**Outpatient:** The term *Outpatient* means a patient who comes to a Hospital or other treatment facility for diagnosis and/or treatment, but who does not stay overnight.

**Out-of-Network:** The term *Out-of-Network* means Covered Benefits received from a provider of health care services who is not a Participating Provider in the PPO.

26. Repair and maintenance of Durable Medical Equipment;

27. Charges for private duty nursing;

28. Supplies and/or services related to sex transformations or sexual dysfunctions or inadequacies, other than diagnosis and treatment of organic impotency;

29. Supplies and/or services prior to a Covered Person's effective date of coverage or after a Covered Person's termination date;

30. Supplies and/or services which are not Medically Necessary;

31. Non-medical recreational or educational therapy, or other forms of non-medical self-care or self-help training and any related diagnostic testing;

32. Any treatment, supplies and/or services related to an Occupational Illness or Occupational Injury;

33. Any Cosmetic Procedure, other than a Surgical Procedure for a newborn Dependent to correct a congenital defect or birth abnormality;

34. Surgical Procedures, surgical supplies, and any related supplies and/or services for the treatment or control of obesity, except as noted in Medical Benefits;

35. Drugs or medications that do not require a prescription, cosmetics, dietary supplements, vitamins, nutritional formulas, beauty aids, contraceptive devices, the Norplant System, other disposable medical supplies and/or services, blood pressure monitoring devices, and lifestyle/sexual dysfunction treatments (e.g. Viagra);

36. Membership fees associated with health clubs and weight loss clinics;

37. Assistance in the activities of daily living, including eating, bathing, dressing, or any custodial or self-care activities, homemaker services, supplies and/or services primarily for rest or domiciliary care, or any supplies and/or services that do not require skilled care;

38. Care for military service connected disabilities for which the Covered Person is legally entitled to supplies and/or services and for which facilities are reasonably available to the Covered Person and for which the Covered Person has no obligation to pay;

39. Supplies and/or services for conditions that state or local law requires to be treated in a public facility, except for supplies and/or services for conditions covered under the Medical Assistance Payment Program (Medicaid), or within the jurisdiction of the Illinois Department of Children and Family Services and the Illinois Medical Assistance Act;

40. Radial keratotomy or any Surgical Procedure for the improvement of vision when vision can be made adequate through the use of glasses or contact lenses;

41. Family and marital counseling;

75